OPINION OF THE COURT
John G. Turner, Jr., J.
A suppression hearing was commenced in the above on October 23, 1990, with issues covering Huntley material and contraband seized involving Mapp law.
*458 The hearing continued on November 2, 1990, that being the first adjourned date and was concluded on that date.
The People called a single witness in the person of Detective Lieutenant David Epting.
A stipulation of sorts was entered into between the counsel for the People, Mr. Clyne, and counsel for the defendant, Raymond Kelly, in connection with what Detective Lieutenant Fargione would testify to in the event he were called by the defendant. It was thought he would be available for testimony following Detective Lieutenant Epting’s testimony. However, Lieutenant Fargione was called out of the courthouse and was unavailable.
The defendant testified in person and called, in addition, Marilyn Harris who was said to be the defendant’s live-in girlfriend, and his travel mate on the date of his arrest in the instant case.
FACTS
The defendant’s arrest derived out of an incident which took place on September 7, 1989, between 8:30 and 9:00 p.m., at the Greyhound Bus Station, located on Hamilton Street, in the City of Albany, County of Albany, State of New York.
Three or four pairs of undercover narcotic detectives were assigned and working within the bus station on the date and time of the arrest and for a number of hours prior to the arrest. Their purpose, stated a number of times, to persons whom they approached in the station, was to interdict drug traffickers traveling on buses from New York City into the Albany terminal, for travel to points north and west within the State of New York.
The Greyhound Bus Terminal has over the last past several years been a hotbed of drug activity resulting from the physical location of Albany, New York, as it stands on the public transportation route by bus from New York City to Utica, Syracuse, Rochester and Buffalo and from New York City as well to points north of Albany, including the area of Saratoga and Glens Falls, New York, and on up along the borders of Lake Champlain to Plattsburg, New York.
By virtue of oral argument entered into between each counsel at the conclusion of the proof, it was made apparent that, hypothetically, crediting the truthfulness of everything testified to on the part of the People, the counsel for the defendant was of the opinion that the "search stinks.”
*459 Notwithstanding this assertion, the court states that the testimony of the defendant, Cecilio Brewster, and of his travel companion, Marilyn Harris, is for the most part, unbelievable. The defendant is, of course, a possible persistent felon and had every reason in his testimony to deviate from the truth. Miss Harris, defendant’s live-in companion, likewise had reason to deviate from the truth. Defendant was on parole. Harris, an admitted user, pleaded and was sentenced.
On the evening in question, in the high-crime area known as the Greyhound Bus Terminal, the defendant and his travel companion were transported by bus from New York City to Albany. Upon arrival they took seats in the station where they found they would have to sit for several hours or until they could make a connection with the bus which would take them to Saratoga, the town of their residence.
While so seated for the several hour period, Detective Lieutenant Epting and his partner, Detective Layman, along with other narcotic pairs, made 3 or 4 approaches to other persons who had come into the station by bus from New York City and who were headed elsewhere. These approaches were within earshot of the defendant. The approaches, essentially all the same, involved an out loud, easy to hear introduction by the narcotic detectives to a person, by first exhibiting a police badge worn on a chain around the neck of the detective and ordinarily hung under the shirt. By exposing the badge in the presence of a person, the detective would permit visual identification and would then give the person his name, tell him he was a detective and that he was interdicting in connection with drug traffic between New York City and points north and west. The detective would further ask the person from whence he had come and where he was going. He would ask for identification which occurred in the instant case, the defendant producing a Social Security card as well as an identification card from a place of employment. This procedure in the instant case and in the situations which immediately preceded this case and of which the defendant was aware was followed by a question: "Do you have anything on your person that you ought not have?” In the event the person responded in the negative, which this defendant did, the detective would then say, "Well, that being the case you would have no objection if we asked you to accompany us into the men’s room along with your bag so that we could have a look?” The defendant in this case, as well as in the prior cases which occurred the same evening at the same bus station, *460 responded, "True.” Defendant’s lady friend said, "No, no reason.”
Upon a consent situation, as portrayed by the testimony of the detective for the People, the defendant and the two detectives went into the men’s room; the defendant’s bag was examined and found to contain heroin and paraphernalia, consisting of a new crack pipe, a mixing bowl, and a hundred vials into which crack was typically placed for resale.
Upon escalation of the situation, the defendant was arrested. A search followed. The search disclosed cocaine in two plastic bags in the area of the groin, made available to the detectives upon search of the person of the defendant.
The police testified and the court finds as fact that the defendant, as he heard the identifications made by the police people to other customers within the bus station, remained ever alert but would not respond to an attempt at eye contact by the detectives with the defendant. Upon approach by Detectives Epting, Hughes and Layman, the defendant’s reaction disclosed an extremely nervous person, who became agitated as the interview continued, whose hands shook and who commenced to stutter.
The testimony of Detective Epting on cross-examination substantiated his testimony on direct and enforced its credibility.
In connection with the cross, the detective indicated that the Albany Police Department did not have a profile for any particular type of person within the Greyhound Bus Station or elsewhere within the city in connection with drugs. They did indicate black folk had been statistically arrested in greater numbers than had white persons but that this did not create a profile. The detective further indicated that the Albany Police Department did not have any written instruction to narcotic officers to be used in connection with an arrest in the bus station involving drugs, nor were there any oral directions imparted to the detectives in advance of this day or any other time in advance of the event which we have here for consideration. The detective indicated that each of the detectives acted within his own discretion, under the law as he knew it to be.
Detective Epting had been with the narcotics unit for one year and had been a police person for the past 17 years. Over this time he had been involved in on-the-job training in connection with drug interdiction and had some formal training as well.
*461 The reasonable suspicion, based on the above set forth, "indicators,” to use the detective’s word, followed by consent on the part of the defendant to accompany the detective to the men’s room with his bag for further search, created the escalation which gave rise to the existence of probable cause, thus rendering the arrest in the men’s room well founded.
Appropriate Miranda warnings were given in the men’s room prior to arrest and again at the police station after shipment there from the bus station. At no time did the defendant ask for an attorney, nor did he ever state that he could not read or fail to understand the appropriately rendered Miranda warnings.
Incidental to' the arrest of the defendant, the female companion was arrested for possession of 10 empty vials, and a new crack pipe.
The defendant made a statement to the effect that he was on his way to Saratoga to cut up the powder; that the cocaine was his, not that of Marilyn Harris, though it was contained in a bag which she had obtained from the purchase of some clothes in New York City.
CONCLUSIONS OF LAW
The court finds on the facts above stated, that the People v De Bour (40 NY2d 210) rule was appropriately followed by the narcotics police in this case. Reasonable suspicion occurred, albeit based on a ruse. The fact of the ruse is permissible in circumstances such as this. Contrary to the argument of counsel on the part of the defendant, and obliging the appropriate burdens as required in a case such as this, people who sit as customers in the Greyhound Bus Station in Albany, New York, at the instant date and time and for some several years prior thereto and continuing through to the present, by virtue of the station being a transfer shipment point for narcotics, are subject to approach by the police who may inquire of them their name, their travel plan, that is, where they come from and where they are going. A request for identification is appropriate.
All this is appropriate, notwithstanding the absence of an anonymous tip that the defendant is in the commission of a crime; the absence of a confidential informant tip; in fact the absence of any precise belief at all that a person is possessed of narcotics. Such an approach includes the sequence questions which were utilized in this case. If these questions *462 produce a reasonable foundation for a reasonable suspicion, then the matter is deemed to have escalated, and the ruse questions may be propounded. Depending on the answer, and the demeanor of the defendant, and coupled with voluntary consent, the person may be accompanied by the police, not in custody, nor under arrest, to the men’s room, with his luggage, for further examination.
If the matter continues to escalate as .it did here, that is, drugs are found as they were here, then of course the arrest is upon probable cause. Miranda then becomes appropriate as it did here. It was administered properly and the statements made by the defendant, notwithstanding the Miranda warnings, are admissible against him at trial. The position of the counsel for the defendant, presuming the credibility of the testimony of the People, thát the search is nonetheless without legal foundation is not the law. The police are not prohibited from approaching persons seated in the Greyhound Bus Station under the facts and circumstances as known by the police. Fourth and Fifth Amendments of the US Constitution are not violated. There is no voluntary relinquishment of a known right or need the persons seated within the station need to be advised first that they may refuse consent to have their bag examined in the men’s room. They may refuse. They may get up and walk away. Each is lawful.
DECISION
Upon the facts as found, the motion to suppress is denied on the facts and the law.